**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **IN RE: OHIO EXECUTION PROTOCOL LITIGATION** | **2:19-mc-3878**<br>**2:20-mc-3914**<br><br>**CHIEF JUDGE EMILY C. MARKS**<br>**CHIEF MAGISTRATE JUDGE STEPHEN M. DOYLE**<br><br>**DEATH PENALTY CASE**<br><br>***Next Execution Scheduled For March 15, 2023*** |

**Joint Status Report**

## I.    Introduction

1.    This Court ordered Movant and Plaintiffs (the "parties")[1] to identify the specific issues that remain unresolved in this matter, and to file a joint status report advising the Court of those issues.  (Order, ECF No. 73.)  The parties have reached accord on some matters.  But they remain at an impasse on the overarching issue of whether the motions to quash should be denied.  In accordance with the Court's order, the parties present their following respective positions.[2]

---

[1] Unless otherwise specified, references to "the parties" in this Joint Status Report refer to Movant and Plaintiffs, as distinguished from the plaintiff and defendant parties to the underlying Ohio litigation.

[2] The parties are jointly responsible for the contents of Sections I and II of this Joint Status Update.  Counsel for both parties reviewed those sections and agreed with the contents therein.  Each party prepared their own

# Table of Contents

I.    INTRODUCTION ........................................................................ 1

II.   DISPUTED ISSUES NOW RESOLVED ................................... 3

III.  PLAINTIFFS' POSITIONS ON THE MATTER STILL IN DISPUTE............. 7

     A.    Disputed Issue #1 ....................................................... 8

IV.  MOVANT'S POSITIONS ON THE MATTER STILL IN DISPUTE .............. 23

     A.    Disputed Issue #1 .................................................... 23

V.   MATTERS RELATED TO A MOTION TO TRANSFER ........................... 30

     A.    Plaintiffs' position on transferring the motions to quash ........... 30

     B.    Movant's position on transferring the motions to quash............. 34

---

respective positions in Sections III, IV, and V: the text in those sections was the responsibility of the applicable party.

**II.    Disputed issues now resolved**

2.      As recounted and further set out in Plaintiffs' Supplemental Status

Report (ECF No. 63), and in the parties' Partial Status Report (ECF No. 48), and

the parties' Supplemental Joint Status Report (ECF No. 53), the parties have

agreed on the following matters previously in dispute:

3.      **Issue:** Whether Plaintiffs' underlying litigation over Ohio's lethal

injection method of execution remains viable following the decision

by the United States Court of Appeals for the Sixth Circuit in

*Henness v. DeWine*, 946 F.3d 287 (6th Cir. 2019).

**Resolution:** The parties have reached a mutual agreement that

Plaintiffs' underlying litigation over Ohio's lethal injection method

of execution remains viable following *Henness*.  (Partial Status

Report, ECF No. 48, at 2.)

4.      **Issue:** Whether evidence regarding pain and suffering inflicted by

an execution method using midazolam remains relevant to

Plaintiffs' litigation in Ohio.

**Resolution:** The parties have agreed that evidence regarding pain

and suffering inflicted by an execution method using midazolam

remains relevant to Plaintiffs' litigation in Ohio.  (*Id.*)

5.      **Issue:** Whether, post-*Henness*, Plaintiffs may still pursue discovery

regarding execution protocols using midazolam.

**Resolution:** The parties have agreed that post-*Henness* decisions

by federal courts in Ohio and Tennessee continue to leave the door

open for discovery regarding execution protocols using midazolam.
(*Id.*)

6.  **Issue:** Whether an authenticated copy of the written execution
    protocol the State of Alabama used to carry out the executions of
    Dominique Ray, Michael Samra, Christopher Price, and Nathaniel
    Woods is responsive to Plaintiffs' subpoena.

    **Resolution:** The parties agree that an authenticated copy of the
    written execution protocol the State of Alabama used to carry out
    the executions of Dominique Ray, Michael Samra, Christopher
    Price, and Nathaniel Woods is responsive to Plaintiffs' subpoena.
    (*Id.* at 2–3.)

7.  **Issue:** Whether Movant will produce to Plaintiffs the relevant
    Alabama execution protocol document and authentication
    paperwork, with redactions in the document identical to those
    permitted by the United States District Court for the Northern
    District of Alabama in *Hamm v. Dunn*, No. 17-cv-02083, ECF Doc.
    No. 139, and ECF Doc. No. 140, Exhibit 1.

    **Resolution:** On December 16, 2021, Movant produced the
    redacted copy of the applicable Alabama execution protocol
    document used to carry out the above-mentioned executions, along
    with the signed, sealed, and notarized certification to satisfy the
    self-authentication requirements under the Federal Rules
    of Evidence.

4

8.    **Issue:** Whether there remain any other documents or materials that are responsive to Plaintiffs' subpoenas.

9.    **Resolution:** Movant has acknowledged and agreed that there are additional documents that are responsive to the subpoenas, beyond just the execution protocol documents.

10.    Furthermore, the parties have recently reached an accord on the following additional issues:

11.    **Issue:** Whether sovereign immunity permits Movant to refuse to respond to the second subpoena.[3]

12.    **Resolution:** The parties agree that sovereign immunity does not defeat the second subpoena and will not be an impediment to Movant complying with the subpoena.

13.    **Issue:** Whether any federal privilege or protection applies in this matter filed in federal court involving federal questions under 42 U.S.C. § 1983.

14.    **Resolution:** Movant is not asserting any privileges or protections over the responsive materials.

15.    **Issue:** Redactions to responsive materials

16.    **Resolution:** Movant will apply limited redactions to only two categories of information in the responsive materials; 1) personal

---

[3] Movant raised the sovereign immunity argument solely in his second motion to quash, in case number 2:20-mc-3914.  The motion to quash the first subpoena does not contain the sovereign immunity argument.

identifying information of execution team personnel, and 2) information regarding the general security operations of the prison. (*See* Order, Case No. 19-3878, ECF No. 17, at 1 ("The names or identifying information of individuals connect to or involve in the execution of inmates, as well as details concerning the location of ADOC correctional officers and officials during the execution process, their duty posts, and their movement within the facility during the process, shall be redacted.").)

17. Thus, Movant will redact only names, social security numbers, and other unique personal identifying information, and matters that Magistrate Judge Capel ordered redacted in his order cited above. Information regarding how the condemned inmate is prepared for the execution process and other information specific to implementing the execution protocol as to a specific condemned inmate will not be redacted.

18. **Issue:** Matters regarding a protective order.

19. **Resolution:** The parties agree that, if a protective order is needed, they will jointly seek a protective order from the United States District Court for the Southern District of Ohio, and that they will be bound by the terms of that protective order.

6

**III.    Plaintiffs' positions on the matter still in dispute**

20.    While the parties have reached an accord on some matters discussed above, there remains a dispute on the overarching matter whether the motions to quash should be denied.

21.    Plaintiffs submit that this Court should move forward to deny the motions to quash and order Movant to comply with the subpoena, with limited redactions as agreed upon and ordered by Magistrate Judge Capel, and in accordance with the resolved issues enumerated above in paragraphs 2–19. Plaintiffs contend that the law is squarely in their favor on this matter, and thus denying the motions to quash is not only the simplest resolution, but also well-supported by the relevant caselaw.

22.    Plaintiffs further submit that an order by this Court in Plaintiffs' favor on Disputed Issue #1—denying Movant's motions to quash on the basis of the previously asserted arguments by both sides and ordering that Movant must comply with the subpoenas—would render unnecessary this Court's further consideration of any other remaining matters, including the disputed issues now resolved.

23.    Similarly, Plaintiffs posit that an order in Plaintiffs' favor denying Movant's motions to quash would obviate the need for this Court, Plaintiffs, and Movant to litigate Plaintiffs' contemporaneously filed motion to transfer the motions to quash to the United States District Court for the Southern District of Ohio.

### A.      Disputed Issue #1

24.    **Issue:** Whether Movant's motions to quash should simply be denied forthwith, particularly when Movant has forfeited or waived his primary arguments to quash, including a narrow relevancy argument predicated on the Sixth Circuit's decision in *Henness v. DeWine*, 937 F.3d 759 (6th Cir. 2019)—an argument which Movant has subsequently conceded to this Court is no longer viable in light of further orders from the Ohio federal district court.

25.    **Plaintiffs' arguments and supporting caselaw:**  Movant has no remaining arguments to quash as to the first subpoena, because he waived or forfeited his arguments, and he has conceded his (untimely raised and thus also forfeited) primary relevance argument in Plaintiffs' favor.  Contrary to Movant's contentions in paragraph 63 below, the waiver and/or forfeiture of Movant's *Henness*-based relevancy argument was complete when Movant failed to timely raise that argument after the parties had completed their briefing on the first motion to quash, before Magistrate Judge Capel issued his order denying the first motion.  Likewise, Movant's waive and/or forfeiture of his other arguments to quash was complete when Movant failed to preserve those arguments in his Objections to/appeal of Magistrate Judge Capel's previous order denying Movant's first motion to quash.  So the fact that Movant *later* insisted that he was not waiving any arguments is irrelevant and preserves nothing.

26.    Likewise, this Court should deny the motion to quash the second subpoena, because the arguments in support are the same as those rejected in

Movant's first motion (relevance following *Henness*, and general, unsupported assertions of unidentified privilege), or otherwise meritless (sovereign immunity) and Movant has now agreed that there is no remaining dispute regarding sovereign immunity and that there are no specifically identified federal privileges or protections applicable here.  *See* Paragraphs 11–14 above. Additionally, Plaintiffs addressed each of these arguments in their memorandum in opposition to Movant's second motion to quash, which Plaintiffs incorporate by reference here.  (Memo. In Opp., Case No. 2:20-mc-

3914, ECF No. 4, 9–14 (citing supporting authority[4], and discussing why the cases on which Movant relies are of no help to him here)[5].)[6]

---

[4] Among the supporting cases Plaintiffs cited are *In re Missouri Dep't of Nat. Res. ("Missouri DNR")*, 105 F.3d 434, 436 (8th Cir. 1997), and a line of similarly situated method-of-execution cases, namely *McGehee v. Neb. Dep't of Corr. Servs.*, No. 4:18-cv-3092, 2019 U.S. Dist. LEXIS 42501, *11–13 (D. Neb. Mar. 15, 2019); *McGehee v. Florida Dep't of Corr.*, 4:2018-mc-00004, ECF No. 18, 2019 U.S. Dist. LEXIS 50781, *6–10 (N.D. Fla. Feb. 5, 2019); and *McGehee v. Mo. Dep't of Corr.*, No. 2:18-mc-04138-SRB, 2019 U.S. Dist. LEXIS 10259, *13–15 (W.D. Mo. Jan. 15, 2019).  Also cited are cases involving the misplaced tribal sovereign immunity concepts that Movant attempts to apply here, including *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008); *Miccosukee Tribe of Indians v. United States*, 730 F. Supp. 2d 1344, 1349 n.7 (S.D. Fla. 2010); *Allen v. Woodford*, 543 F. Supp. 2d 1138, 1142–44 (E.D. Cal. 2008). Additionally, Movant cited a recent Alabama Court of Civil Appeals decision that suggests sovereign immunity does not apply if, like in the instant matter, the "suit" arises in the context of a § 1983 action – *Johnson v. Dunn*, 216 So.3d 1217, 1224 (Ala. Civ. App. 2016).

In the Florida *McGehee* case, the court rejected arguments almost identical to those Movant asserts here, concluding that a "third party subpoena is legal process, but it is not the equivalent of a lawsuit.  A subpoena presents a request for documents or information, but responding to that request does not interfere with a state's dignity or respect.  In practical application, it requires an agent or officer of a state agency to act, not the sovereign itself, as recognized by the Supreme Court.  The Department's argument that it need not comply with a subpoena on the basis of sovereign immunity is rejected." *McGehee v. Florida Dep't of Corr.*, 4:2018-mc-00004, ECF No. 18, 2019 U.S. Dist. LEXIS 50781, at *10 (N.D. Fla. Feb. 5, 2019).  The Western District of Missouri *McGehee* case reached the same conclusion, as did the Nebraska *McGehee* case.  The Eighth Circuit eventually vacated, on separate grounds of mootness, the District of Nebraska's *McGehee* decision.  *See* 987 F.3d 785 (8th Cir. 2021).  But the logic and reasoning articulated in the district court's decision remains persuasive, especially given that the Florida and Missouri federal district court rulings used the same logic and reasoning in rejecting analogous sovereign immunity arguments.

[5] As Plaintiffs further noted in their opposition memorandum, Movant's arguments are also misplaced for basic factual reasons, including that the issuing court is not the District of Maryland, but rather the Southern District of Ohio, which is in the Sixth Circuit, not the Fourth Circuit as Movant argues. Additionally, Movant urges the Court to quash the "*Bost* subpoena."  (Mot. to Quash, Case No. 2:20-mc-3914, ECF No. 1, at 5.)  It is unclear who was involved in the "*Bost* subpoena," but that is not this case.

27.     Magistrate Judge Capel previously denied Movant's first motion to quash. (Order, Case No. 19-3878, ECF No. 17.)  When Movant filed his Objections to Magistrate Judge Capel's order denying Movant's motion to quash, Movant raised only a single argument: that the Sixth Circuit's decision in *Henness* (and an order from the Southern District of Ohio vacating an evidentiary hearing in the immediate wake of *Henness*) meant that the underlying Ohio lethal injection litigation was finished as a matter of law.  (*See* Movant's Objections, Case No. 19-3878, ECF No. 18.)  Accordingly, Movant argued, the motion to quash should be granted because it sought information now rendered irrelevant.  (*Id.*)  Movant in his Objections raised no other arguments in support of his motion to quash.

28.     Under well-settled and binding law, however, a party forfeits or waives arguments not raised in objections to a Magistrate Judge's Order.  Fed. R. Civ. P. 72(a); *see also Smith v. Sch. Bd. Of Orange Cty*, 487 F.3d 1361, 1365 (11th Cir. 2007) ("Because Smith did not file [] objections to the magistrate's

---

[6] Plaintiffs also presented additional arguments demonstrating why any sovereign immunity position is unavailing to Movant, in their memorandum in opposition to Movant's motion to quash Plaintiffs' third subpoena.  *In re Ohio Execution Protocol Litig.*, No. 2:22-mc-3981, Plaintiffs Cleveland Jackson and Stanley Fitzpatrick's Response To Show Cause Order (ECF No. 9), and Memorandum In Opposition to Movant ADOC Commissioner's Motion to Quash Third-Party Subpoena (ECF No. 1), ECF No. 12, at 29–37 (M.D. Ala. Aug. 23, 2022).  Notably, Movant has now agreed that sovereign immunity plays no role here, as noted above in paragraphs 11–12.

Additionally, Plaintiffs presented further arguments explaining why Movant has not sufficiently alleged any cognizable privilege or protection.  *See id.* at 17–29.  Both apply to similar arguments Movant raised in his second motion to quash, and Plaintiffs incorporate their opposition arguments here by reference.  *See also* Paragraphs 13–14 above.

November 23, 2005 order, he has waived that issue for purposes of this appeal. *See* Fed. R. Civ. P. 72(a); *see also Maynard v. Bd. of Regents*, 342 F.3d 1281, 1286 (11th Cir. 2003).") (cleaned up); *see also Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (holding that issues not raised below will not be considered on appeal, listing cases); *EEOC v. Jack Marshall Foods, Inc.*, No. 09-0160-WS-M, 2010 U.S. Dist. LEXIS 172, at *6–7, 16–17 & n.8 (S.D. Ala. Jan. 4, 2010) (explaining that various arguments on appeal to the District Court from a Magistrate Judge's nondispositive order were "lost by the defendant's failure to raise them in a timely manner").

29.    As to Movant's privilege claims in his first motion to quash, Magistrate Judge Capel was succinct in his rejection of any such claim: Movant's "opposition to the subpoena is based on issues of privacy of the individuals involved in the execution and security concerns of the Alabama Department of Corrections, which the Court finds can be addressed with appropriate redactions."  (Order, Case No. 19-3878, ECF No. 17, at 1.)  Magistrate Judge Capel also rejected Movant's cursory assertions that the subpoena was not relevant, overly broad, and unduly burdensome, finding that those arguments "were not supported with specific facts, arguments, or legal authority."  (*Id.*)

30.    With the exception of a new, meritless, sovereign immunity argument, Movant's second motion to quash asserts the same substantive arguments as his first motion, and thus the same analysis that Judge Capel used applies equally to the second motion.

31.     District Judge Marks eventually sustained Movant's *Henness*-based relevancy objections to Magistrate Judge Capel's order and returned the matter to the Magistrate Judge.  But Judge Marks was clear that she was only sustaining the objections that were before her, *i.e.*, the *Henness*-based relevancy argument.  Thus, she sustained the objections and vacated Judge Capel's order only "*to the extent that* . . . this matter is returned to the Magistrate Judge with instructions to consider the Commissioner's *objections in light of* Henness, . . . and to consider whether the developing law [regarding *Henness*] impacts the relevance of the documents sought by the subpoena." (Order, Case No. 19-3878, ECF No. 39, at 3 (emphases added).)

32.     Accordingly, Magistrate Judge Capel's finding that Movant's opposition to the subpoena "based on issues of privacy of the individuals involved in the execution and security concerns of the Alabama Department of Corrections, which the Court finds can be addressed with appropriate redactions," (Order, ECF No. 17, at 1), was never vacated by Judge Marks.  Thus, that finding should remain binding in this case, and Movant has forfeited or waived any further privilege-based argument by failing to appeal it.  *See also* Paragraphs 13–14 above.

33.     Further, Movant's relevance argument likewise fails, for two reasons. First, Movant has now conceded the relevance issue in Plaintiffs' favor, as explained in Paragraphs 3–5 above.

34.     And second, Movant waived or forfeited the *Henness*-based relevance argument because the argument was available to be raised before the

Magistrate Judge for approximately one month or more before the Magistrate
Judge issued his order denying the motion to quash, but Movant failed to
timely raise the argument.  *See EEOC v. Jack Marshall Foods, Inc.*, No. 09-
0160-WS-M, 2010 U.S. Dist. LEXIS 172, at *6–7, 16–17 & n.8 (S.D. Ala. Jan. 4,
2010); *see also Access Now*, 385 F.3d at 1331 (refusing to "allow Plaintiff to
argue a different case from the case she presented to the" initial court,
particularly when the party "had every opportunity to raise the new theory"
before the initial court).

35.    When Movant has conceded that the only substantive argument in
support of quashing he raised on appeal to the District Judge—itself a forfeited
argument—is no longer tenable, and his other remaining arguments have
already been rejected by this Court or conceded, his motions to quash are
unsupported and must fail.  Accordingly, this Court can and should promptly
deny Movant's motions to quash, without any need for further proceedings.

36.    Additionally, this Court should reject Movant's position articulated in
Paragraph 56 below that he is "unable to comply with subpoena [sic] without a
protective order."  Movant has not moved for a protective order as required
under Federal Rule of Civil Procedure 26(c), and there is no agreement between
the parties as to the scope or provisions of any potential protective order.  In
any event, the presence or absence of a protective order is a different matter
from whether Movant's motions to quash should be denied.  Movant also failed
to assert, in his motions, the need for a protective order as a basis to quash.
And here, Movant has cited no caselaw supporting his position that he can

14

simply and unilaterally declare he will not comply with a subpoena in the absence of a protective order.

37.     Movant also seemingly asserts a jurisdictional argument.  *See* Paragraphs 57–60 and 63 below.  But it is unclear what his point is, as Plaintiffs have not contested that this Court has jurisdiction to deny or grant the motions to quash.  Rule 45 as amended in 2013 is clear on that point.  If Movant is arguing that there is no personal jurisdiction over him because the subpoenas were issued out of the United States District Court for the Southern District of Ohio, that is a frivolous argument following the 2013 Amendments to Rule 45, which allowed for nationwide service of a subpoena and made clear that the issuing court is the court overseeing the underlying action, while the court for the location of compliance has initial jurisdiction for considering motions to quash or compel.  Movant also now suggests that there is no subject matter jurisdiction, but provides no further support or discussion for that conclusory assertion, nor any explanation of what he is arguing. Accordingly, Plaintiffs are unable to substantively respond to that assertion, other than to state they disagree and contend there are no jurisdictional flaws here.  If Movant is invoking jurisdiction as related to any potential protective order, that is irrelevant to the question whether this Court should deny the motions to quash.  Moreover, as noted previously, Movant has not filed a motion seeking a protective order.  *See also* Paragraphs 18–19 above.  This Court should reject any jurisdictional arguments as meritless, if not frivolous.

38.    Movant now asserts that the subpoenas are "facially invalid."  *See*
Paragraphs 59–60 below.  But he provides no further explanation for that
allegation, so Plaintiffs are unable to substantively respond to it other than to
note they disagree, and they contend the subpoenas are valid in every way.
Notably, Movant's two motions to quash at issue here make no mention of this
argument, so this Court can disregard that unsupported, unasserted argument
as a basis for whether to quash the subpoenas.

39.    In Paragraphs 58–60 below, Movant asserts that Plaintiffs are forcing
Movant to oppose the subpoenas in a distant jurisdiction where Movant has no
counsel.  That is a matter for a motion to transfer, not a reason to grant the
motions to quash and, as such, it is irrelevant on the disputed issue of whether
the motions to quash should be denied or granted.  And in any event, it is an
erroneous understanding of Rule 45(f)'s provisions that would allow Movant's
counsel to litigate the motions to quash in the United States District Court for
the Southern District of Ohio.

40.    In Paragraph 61 below, Movant argues that this Court "has ruled the
kind of documents sought here to be confidential and has prohibited their
production," citing an Agreed Confidentiality Order in *Grayson v Dunn*, M.D.
Ala. case no. 2:12-CV-0316.  Movant does not cite which ECF document
number in *Grayson* he invokes.  Presumably he means ECF No. 74.  But
regardless, Movant critically misrepresents what the Court did in *Grayson*.

41.    The Court in that case did not "rule" that anything was "confidential,"
nor did the Court "prohibit their production" as Movant represents.  In that

16

case, the parties submitted a joint motion for a protective order, *see* Joint Motion for Protective Order, *Grayson*, No. 2:12-cv-316, ECF No. 55, which the Court adopted in ECF No. 74.  Far from "prohibiting the production" of any documents, or holding that execution-related documents are "confidential" as a rule, as Movant represents, the Order *facilitated* production of a host of documents related to Alabama executions, to a wide range of persons.  The Order did not "rule" that the documents were "confidential."  Rather, the Order outlined a class of documents that would be considered "Confidential Material," and directed who could receive and review materials properly designated under the Order as Confidential Material.  That is, the Order created a defined term (Confidential Material) as agreed upon by the parties, and then explained what that term encompassed and who could receive or use materials that fell within that defined term's definition.  It did not purport to characterize all execution-related documents as "confidential" as a rule, nor did it "prohibit their production," contrary to Movant's representation.

42.    Notably, that Order, issued by this Court, governed litigation in the Middle District of Alabama, so there were no concerns about conflicts between a protective order issued in one district (*e.g.*, the Middle District of Alabama) purporting to control the conduct of litigation in another court (*e.g.*, the Southern District of Ohio) that would give rise to a compelling argument to transfer a motion to quash.  But again, Movant has not filed a motion for a protective order in any court, so this has no bearing on the remaining dispute—whether the motions to quash should be denied or granted.

17

43.     Also in Paragraph 61 below, as well as Paragraph 56 below, Movant

asserts that the "cases cited by the Ohio parties are inapposite to the facts and

context of the instant case," (Paragraph 61 below), and that "the Ohio cases

cited by the Ohio parties do not apply," (Paragraph 56 below).  It is unclear

which cases Movant references.  To the extent that Movant is arguing about

enforcement of a protective order or requirements to seal court records if

Plaintiffs ultimately choose to use in the Ohio litigation any materials obtained

via the present subpoenas, that position is irrelevant to the disputed issue of

whether the subpoenas should be quashed.  Movant has not filed a motion for

protective order.  There is no protective order in place, from any court, that

controls production of responsive documents.  Different views between the

parties on the contents, restrictions, and scope of a protective order or the

properly issuing court are irrelevant to whether this Court should deny the

motions to quash.

44.     Movant's argument is also facially meritless.  Movants have cited no

authority to suggest that this Court can bind the hands of the federal courts in

Ohio by issuing an un-requested protective order requiring indefinite, perpetual

sealing of any responsive documents.  And Rule 45(f) was amended in 2013 to

help resolve that very concern.  So if the presence or absence of a protective

order has any bearing on whether the motions to quash should be denied—and

it does not—then that can be resolved by the United States District Court for

the Southern District of Ohio, following transfer of these consolidated motions.

45.    To the extent Movant attempts to chide Plaintiffs for discussing Sixth Circuit and Southern District of Ohio law, that misses the mark too.  Plaintiffs discussed Sixth Circuit and Southern District of Ohio precedent on sealing of court records because those courts will ultimately be the courts to determine whether any materials responsive to the subpoenas here are properly placed and perpetually maintained under seal if and when Plaintiffs use the responsive documents as evidence in the Ohio litigation.  Once again, however, this is a matter related to a protective order and which court should issue a protective order, if any: it is not a relevant argument for whether the motions to quash should be denied or granted.

46.    Furthermore, even if Eleventh Circuit law was the relevant law for that particular issue, binding Eleventh Circuit precedent holds that Alabama's execution-related documents may not be kept sealed if or when used as a judicial record.  *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1165–70 (11th Cir. 2019).  Indeed, *Advance Local Media* is in lock step with the Sixth Circuit's decision in *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016), holding that a document need not even be filed on the public docket to be considered a judicial record to which a presumption of public access attaches.  *Advance Local Media*, 918 F.3d at 1167–68.  *Advance Local Media* also held that the district court properly assessed whether there was "good cause" to keep the execution records sealed, and properly rejected the same type of arguments Movant asserts here.  That included claims of unspecified ADOC confidentiality policies, and ADOC's

19

contention that no execution-related documents could be produced because of "sensitive security information" concerns. *Id.* at 1170. Like Magistrate Judge Capel already found here, the Eleventh Circuit agreed that such security concerns could be adequately addressed with redactions. *Id.* Moreover, the Eleventh Circuit rejected the argument that a protective order sought and issued under Rule 26 allows a producing party to keep judicial records sealed. *Id.* at 1168–69. As noted above, Movant has sought no protective order, and no protective has been granted.

47.     In Paragraph 62 below, Movant misrepresents Plaintiffs' position: Plaintiffs are not contending that "the Sixth Circuit does not allow motion [sic] to seal."[7] Plaintiffs argue only that Sixth Circuit law does not allow that which Movant demands before complying with the subpoenas, which is blanket, indefinite sealing of all responsive documents, even if used in the Ohio litigation as court records. Rather, the Sixth Circuit—like the Eleventh Circuit, *see Advance Local Media*, 918 F.3d at 1166 (citing *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (per curiam))—applies a presumptive right of public access to judicial records, under which a party desiring to have a judicial record sealed must overcome a high burden based on an intensive, factor-specific analysis. *See also* FTC v. AbbVie Prods., LLC, 713 F.3d 54, 62 (11th Cir. 2013) (citing *Chicago Tribune*, 263 F.3d at 1311). Accordingly, it is not a surprise that there may be matters

---

[7] Movant also cites to Exhibits 1–4 to this Joint Status Report, but Movant has not provided any exhibits to Plaintiffs, whether to review or to file.

such as Plaintiff-specific medical or health issues that are kept under seal, because they satisfy the rigorous test to overcome the presumptive right of public access.  Thus, Movant's reference to such filings in the Ohio litigation is neither here nor there.  And again, this is not a matter relevant to whether the Court should deny or grant Movant's motions to quash.

48.    In Paragraph 64 below, Movant asserts that Plaintiffs lack standing to serve the subpoenas.  This assertion is newly raised in this consolidated litigation, appearing nowhere in Movant's two motions to quash at issue here, and thus Movant already waived or forfeited the argument by failing to raise it in his motions.  Accordingly, that waived or forfeited argument provides no basis for the Court to quash the subpoenas.

49.    Moreover, the standing argument is meritless, predicated as it is on an erroneous supposition and citing Wikipedia for authority.  Plaintiffs responded substantively to the standing argument in their memorandum opposing Movant's third motion to quash, and Plaintiffs incorporate those responses here by reference.  Response to Show Cause and Memorandum In Opp. to Motion to Quash, *In re Ohio Execution Protocol Litig.*, No. 2:22-mc-3981, ECF No. 12, at 39–40.

50.    Further, Movant offers nothing more than a conclusory assertion with no basis in historical fact.  The recent spate of gubernatorial reprieves is a historical anomaly in Ohio, not the rule.  Indeed, several former plaintiffs in the underlying litigation have been executed while the litigation has been ongoing. There is no guarantee that any plaintiff's execution date will be reprieved.

51.     Additionally, Movant's position creates an untenable lose-lose scenario for Plaintiffs.  Under the scheduling orders in the Ohio litigation, any plaintiff will have 120 days' notice before his execution that the execution will or will not go forward.  If the execution date will go forward, that plaintiff must file any motion for injunctive relief no later than 99 days before the scheduled execution date.  If Plaintiffs were to wait to serve a subpoena on Movant based on that compressed schedule, Movant would undoubtedly contest the subpoena as not providing enough time to comply.  And, in that tight timeline, Movant could ultimately defeat the subpoena just by dragging matters out, like he has here when one subpoena was served in 2019, and the other was served in 2020.  Years later, Movant still has not complied with the subpoena. Plaintiffs would also be blamed, whether by Movant or by the federal district court in Ohio, for being allegedly dilatory for waiting to serve the subpoena until just before their deadline to file a motion for injunctive relief.  In essence, Movants complain that Plaintiffs seek documents and information too early. But if Plaintiffs wait, they will be criticized for not permitting enough time for compliance and for being dilatory, and they will be severely prejudiced in their efforts to litigate a motion for injunctive relief.  This Court should reject Movant's standing argument, both because it is waived or forfeited, and because it is meritless.

52.     Finally, in Paragraphs 64–67 below, Movant again asserts that undefined, unspecified "policies" and "privileges" preclude responding to the subpoena.  But just as he did before, Movant fails to do that which the law

22

requires of him: he identifies no federal common-law privilege or protection that might help him or that otherwise apply in this litigation involving federal questions filed in federal court under 42 U.S.C. § 1983.  As Plaintiffs have explained on numerous occasions here in their filings, federal common law of privilege controls in this case, and Movant has failed entirely to even identify any potentially applicable federally recognized privilege, let alone explain how such privilege should operate here.  *See also* Paragraphs 14–15 above.  Nor have they identified any actual and specific burden on any state interests imposed by the subpoenas.  And, as Magistrate Judge Capel found, Movant's opposition based on "issues of privacy of the individuals involved in the execution and security concerns of the Alabama Department of Corrections . . . can be addressed with appropriate redactions."  (*See* Order, Case No. 19-3878, ECF No. 17, at 1).  Movant's insufficient and unspecific privilege claims should be rejected once again.[8]

## IV.    **Movant's positions on the matter still in dispute**

53.    Movant submits that the following matters remain in dispute.

### A.    **Disputed Issue #1**

54.    **Issue:** Whether the motions to quash should be denied.

55.    **Movant's arguments and supporting caselaw:**

---

[8] Plaintiffs also offer the following comment on Movant's Footnote 11: that footnote contains an implied but spurious and utterly unsupported allegation about Plaintiffs' motives that is based on nothing more than accusations and a historically unfounded supposition about executions in Ohio.

56.    Dunn takes the position that he is unable to comply with subpoena without a protective order.  The Ohio cases cited by the Ohio parties do not apply. The substantive and procedural law to be applied to an objection to a subpoena is the district where compliance is required, which is of course, the Middle District of Alabama, within the Eleventh Circuit Court of Appeals.

57.    This Court, the Middle District of Alabama, has jurisdiction over Dunn's objections to the subpoena and his motion to quash.  This is the appropriate forum. Pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure, the court for the district "where compliance is required" has jurisdiction over motions to quash subpoenas.

58.    In this case, the actual "place of compliance," is necessarily and only Alabama.  Alabama is the place where the "work" of compliance would occur. Alabama is the place where Hamm lives and works, and the place Where the documents (if any) are maintained. "[R]evised rule 45(d)(3) provides that motions to quash or enforce a subpoena can be brought in the district where compliance is required—*i.e.,* the enforcement court—rather than the issuing court—*i.e.,* the trial court. See Fed.R.Civ.P. 45(d)(3)." See Simon v. Taylor, No. CIV 12-0096, 2014 WL 6633917, at *19 (D.N.M. Nov. 18, 2014).   Of course, the documents are also to be delivered to the Montgomery, Alabama Office of Federal Public Defender.

59.    Such an interpretation is consistent with the corresponding advisory committee note: "The prime concern should be avoiding burdens on local non-parties subject to subpoenas, and it should not be assumed that the issuing

court is in a superior position to resolve subpoena-related motions."

Fed.R.Civ.P. 45 advisory committee note to the December 1, 2013,

amendments (quoted in <u>Simon</u>).  To require non-parties to retain counsel in a

distant jurisdiction like Ohio, or have their normal local counsel required to

become admitted to the Ohio State Bar (either permanently or pro hac vice) just

so they can object to subpoenas that are facially invalid and contrary to the

dictates of Rule 45(c) is clearly a significant burden of both time and expense

imposed upon the non-party.

60.    The reasoning of the district judge for the Middle District of Louisiana is

persuasive here even if it arises from a slightly different context. This opinion

"nails" the burden that Plaintiffs are trying to impose on Dunn by having

facially invalid subpoena issued and then forcing upon them the burden and

expense of opposing the subpoenas in a distant jurisdiction where they have no

counsel.

> Those conveniences are still balanced by safeguards against undue
> burden on the non-parties subject to such subpoenas. Those
> safeguards include geographic restrictions on place of compliance,
> imposition of a duty to take reasonable steps to avoid undue
> burden or expense, as well as the ability to move the court to
> quash or modify a subpoena in the district where compliance is
> required. Consistent with those protections, enforcement of
> subpoenas to nonparties is still directed to the district court of the
> place of compliance. *This ensures that the nonparty is not subject to
> the burden and expense of enforcing its rights and interests in every
> state and federal district merely because a party to a lawsuit in that
> state or district wants records in the non-party's possession.*

<u>Shaw Grp., Inc. v. Zurich Am. Ins. Co.</u>, No. CIV.A. 12-257, 2014 WL 204244, at

*2 (M.D. La. Jan. 17, 2014) (footnote omitted). (Emphasis added).

61.    The Middle District of Alabama has ruled the kind of documents sought here to be confidential and has prohibited their production. (Agreed Confidentiality Order in <u>Grayson v Dunn</u>, Case no. 2:12-CV-0316 at p. 8).  In this case, Dunn proposes that not only would the parties *agree* to a protective order, but that this Court would enter the protective order with the full weight and force of the Federal Court behind it.  The cases cited by the Ohio parties are inapposite to the facts and context of the instant case.

62.    Even if the law of the Sixth Circuit were to apply to this issue *ad arguendo*, the Ohio parties' position that Sixth Circuit does not allow motion to seal is untenable.  The subpoenaing parties themselves have moved on numerous occasions to seal documents in the Sixth Circuit.  (See Exhibits 1-4 to this status report).

63.    The Ohio parties' concession/waiver argument on pages 15-18 is without merit. Dunn has maintained his objections to jurisdiction, the Eleventh Amendment, relevancy, materiality, and proportionality "early and often" throughout this litigation.  <u>See</u> <u>i.e</u>, Dunn' Status Report, Doc. 64 at p. 2, paragraph 2; Joint Status Report, Doc. 53, p. 2, paragraph I, (a), "The motions to quash are not waived, and no objections are waived'. Of course, many of Dunn's defenses and objections involve *lack of personal jurisdiction* and *subject matter jurisdiction* which <u>cannot</u> be waived.  Theoretically, such arguments could be asserted, for the first time, in oral argument before the United States Supreme Court.

64.     The subpoena should be quashed because the Ohio parties lack standing.  See generally City of Los Angeles v. Lyons, 461 U.S. 95, 105-06, 103 S. Ct. 660, 667 (1983).  There have been no executions of any kind in Ohio in the last four years. Further, the current governor of Ohio, Governor Mike DeWine, has publicly taken the position on numerous occasions that he will no longer approve any executions using lethal injections.[9]  There is no reasonable possibility that the records sought will ever be of any good to the subpoenaing parties, or that these parties who ever undergo any detriment or burden or injury for lack of possessing these records.[10]

65.     On the other hand, the Commissioner of the Alabama Department of Corrections maintains his position that the State has an interest in protecting

---

[9] https://en.wikipedia.org/wiki/List_of_people_executed_in_Ohio

[10] It is anticipated that the Ohio parties will respond that execution dates are regularly set for Ohio inmates sentenced to death.  No doubt that is true, but just as regularly Governor Dewine grants them reprieves 120 days prior to their scheduled executions. Since January of 2019, Gov. Dewine granted reprieves to the following:
        Warren Henness.
        Cleveland Jackson
        Kareem Jackson
        Gregory Lott
        James Hanna
        Melvin Bonnell
        John Stumpf
        Rommell Broom
        Douglas Coley
        Stanley Fitzpatrick
        David Sneed
        James O'Neal
        Elwood Jones
        Archie Dixon
        Timothy Hoffner
        Lawrence Landrum
        John Drummond
        Stanley Adams, and maybe several more since this list was compiled.

these records and has taken the position that their disclosure will burden the State, threaten confidentiality and security, and undermine its public policy.[11] The Alabama Department of Corrections considers its execution protocol, the identity of drugs, dosages, etc. to be sensitive, confidential and protected. As employees of the Alabama Department of Corrections, Dunn and Stewart follow this policy of confidentiality. The main ground for confidentiality is for security concerns and the safety of those individuals involved in the process of executions. Thus, a vital security interest exists with regard to any requested documents and/or items. As such, Dunn and Stewart have a compelling and strong interest in preserving any privileged and confidential information.

66.     The records sought are such that their "disclosure … would … be detrimental to the best interests of the public." Ala. Code § 36-12-40. In addition to the arguments made above, it cannot seriously be disputed that the administration of the death penalty itself is in the best interest of the public. After all, that is exactly what Ala. Code § 13A-5-40 and other statutes setting up the death penalty regimen are: An expression of the public interest. The Supreme Court has repeatedly noted that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." Hill v. McDonough, 547 U.S. 573, 584 (2006) (citing Calderon v. Thompson, 523

---

[11] At some point, an objective outside observer might begin to question what is the real "end game" of how the information sought by these subpoenas might be put to use?—if there really is no reasonable expectation that a lethal injection execution will take place anytime soon in Ohio. Could these documents ever be used to challenge *Alabama's* death penalty regimen or similar protocols in other states? Of course, they could. Dunn is not claiming that is the intent of the Ohio parties here, only that such documents could be potentially be put to such use.

U.S. 538, 556 (1998)). See Ex parte James, 836 So. 2d 813, 862 (Ala. 2002)(concluding that, "[i]t is universally recognized that a Legislature makes laws that are in the public interest or common good."). Compare Robinson v. United States, 324 U.S. 282, 286, 65 S. Ct. 666, 669 (1945)(explaining that, "[i]t is for Congress and not for us to decide whether it is wise public policy to inflict the death penalty at all. We do not know what provision of law, constitutional or statutory, gives us power wholly to nullify the clearly expressed purpose of Congress to authorize the death penalty...."). As part of that public interest, expressed in state law, ADOC officials and employees have the duty to carry out duly-ordered and state-sanctioned executions. See Ala. Code §15-18-82. Efforts that have the effect of preventing ADOC officials and others from carrying out executions are, by definition, detrimental to the public interest.

67.   In addition, federal law protects the privacy of individuals who are not parties to an action, particularly where, as is the case is here, the sought after information is irrelevant to any claim or defense.  Premium Serv. Corp. v. Sperry & Hutchinson Co., 511 2d 225, 229 (9th Cir. 1975); Small v. Provident Life and Acc. Ins. Co., 199 WL 1128945, at * 2 (E.D. Pa. Dec. 9, 1999).  The privacy interests of individuals and entities that participate and administer executions need to be protected for their safety.  Finally, because of the above policy of the Alabama Department of Corrections policy of confidentiality and/or limited time for production, these subpoenas are unduly burdensome and should be quashed pursuant to Rule 45, (d) (3) (A) (iv),

## V.     Matters related to a motion to transfer

### A.     Plaintiffs' position on transferring the motions to quash

More than three years has passed since Movant was served with the first subpoena at issue here.  Movant has delayed full compliance long enough. Movant has forfeited, waived, or conceded his arguments in favor of quashing, including the primary argument—relevance, or his arguments are otherwise meritless and already rejected by this Court.  Accordingly, this Court should, again, deny Movant's motions to quash and order Movant to immediately and fully comply with the subpoenas.  This will have the added benefit of creating precedent that may be helpful going forward, as Alabama conducts additional executions and Plaintiffs (or other plaintiffs in the underlying Ohio litigation) serve related subpoenas on Movant, thereby facilitating more streamlined and timely compliance with such subpoenas.[12]

---

[12] Indeed, Plaintiffs in this matter served a subpoena on Movant on May 12, 2022, seeking materials related to ADOC's executions of Willie B. Smith on October 21, 2021, and Matthew Reeves on January 27, 2022.  The subpoena contained a June 14, 2022, compliance deadline, and thus a May 26, 2022, deadline for serving objections under Fed. R. Civ. P. 45(d)(2)(B).  On May 25, 2022, counsel for Movant requested from Plaintiffs' counsel a 30-day extension to respond to the subpoena, a request to which Plaintiffs' counsel agreed.  That is, Plaintiffs' counsel agreed to establish July 1, 2022, as the new deadline to serve objections under Fed. R. Civ. P. 45(d)(2)(B), and July 15, 2022, as the new deadline to comply with the subpoena.  Movant's counsel ultimately failed to serve any timely objections, and then filed a motion to quash on July 15, 2022.  *See In re Ohio Execution Protocol Litig.*, M.D. Ala. Case No. 2:22-mc-3981, ECF No. 1.  Plaintiffs filed their timely response in opposition on August 23, 2022.

Plaintiffs also note ADOC executed Joe Nathan James on July 28, 2022, and that ADOC intends to execute Alan Miller on September 22, 2022.

Conversely, granting the motions to quash will create conflicting or otherwise inconsistent results, because Movant's primary remaining argument to this Court—that Ohio's lethal injection litigation is no longer viable as a matter of law and thus the subpoenaed materials are now irrelevant—has been squarely rejected by the federal district court in the Southern District of Ohio. *See* Opinion and Order, *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, ECF No. 3714, PageID 165837–38 (S.D. Ohio Mar. 5, 2021) (denying in relevant part Ohio defendants' motions to dismiss following *Henness*, rejecting the same type of *Henness*-based argument Movant advances here, and discussing favorably other sister district court decisions likewise rejecting that *Henness*-based argument, including *King v. Parker*, 467 F. Supp. 3d 569 (M.D. Tenn. 2020)).  Thus, if this Court declines to deny the motions to quash, then transferring the motions to quash is facially appropriate.

68.    Additional factors also establish exceptional circumstances worthy of transferring this case in that scenario as well.  For example, the duration of pendency of the underlying action (ongoing since 2004), the size and complexity of the underlying action's docket (over 4,500 docket entries involving dozens of parties and numerous federal constitutional claims), and the federal district court's intimate familiarity with the case's underlying factual showings and legal claims, each support transferring this matter if this Court does not deny Movant's motions to quash.  *See, e.g.*, *Hoog v. PetroQuest, LLC*, No. 21-mc-80984, 338 F.R.D. 515, 517–19 (S.D. Fla. July 7, 2021) (granting transfer motion based on considerations including avoiding

31

disruption of issuing court's management of underlying litigation, duration of pendency of litigation, complexity of the case, and issuing court's greater familiarity with underlying action); *Estes v. 3M Co.*, No. 2:20-mc-3930, 2020 U.S. Dist. LEXIS 245406, *5 (M.D. Ala. Dec. 29, 2020) (Pate, M.J.) (finding transfer appropriate where it would "avoid disrupting the issuing court's management of the underlying litigation" and where the issuing court is in the best position to rule on the dispute), adopted by, motion granted, 2021 U.S. Dist. LEXIS 10888, *2 (M.D. Ala. Jan. 21, 2021) (Watkins, J.); *Drips Holdings LLC v. QuoteWizard.com LLC*, No. 1:21-mc-17, 2021 U.S. Dist. LEXIS 73492, *14–19 (N.D. Ohio Apr. 16, 2021) (granting transfer motion in light of duration of underlying case (18 months) and subpoena-related motion (6 months)[13], and possibility of inconsistent rulings on matters including relevancy); *Edwards v. Maxwell*, No. 16-61262, 2016 U.S. Dist. LEXIS 180546, *2–6 (S.D. Fla. Nov. 22, 2016) (granting transfer motion in part because the underlying case had already been heavily litigated (517 docket entries) and involved complex issues); *Flynn v. FCA US LLC*, No. 16-mc-2034, 216 F. Supp. 3d 44, 47–49 (D.D.C. Nov. 2, 2016) (granting transfer motion, in part because issuing court was the court best situated to decide arguments to quash based on relevance); *The Dispatch Printing Co. v. Zuckerman*, No. 16-cv-80037, 2016 U.S. Dist. LEXIS 10184, *7–10 (S.D. Fla. Jan. 27, 2016) (granting motion to transfer

---

[13] By contrast, Movant ADOC Commissioner's first motion to quash has been pending since July 8, 2019, while his second motion to quash a subsequent subpoena has been pending since June 11, 2020.

motion to compel to Southern District of Ohio based on factors including complexity (1,015 docket entries) and duration (almost 10 years) of underlying litigation, risk of inconsistent rulings, and judicial economy); *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, No. 14-mc-538, 307 F.R.D. 30, 34–36 (D.D.C., Oct. 3, 2014) (granting transfer motion because the underlying case had been pending for four years, and had involved numerous discovery disputes and thus the issuing court was "in a far better position . . . to evaluate the relevance of, and necessity for, the documents" in question); *Wultz v. Bank of China, Ltd.*, No. 13-1282, 304 F.R.D. 38, 46–47 (D.D.C. May 30, 2014) (granting transfer motion because the underlying case was highly complex and intricate, and a ruling by the court where compliance was required would "inevitably disrupt" the issuing court's management of the underlying case).

69.     The *Flynn* case in particular highlights the importance of having the court overseeing the underlying litigation decide matters of relevance.  *See Flynn*, 216 F. Supp. 3d at 47.  The same principles and analysis articulated in *Flynn* likewise weigh here in favor of transferring the motions to quash to the Southern District of Ohio if this Court declines to deny the motions outright.

70.     At bottom, however, this matter can be resolved expeditiously.  As Plaintiffs referenced in their Supplemental Status Report (*see* ECF No. 63, at 11–14), Plaintiffs respectfully submit that they can provide this Court alternative pathways by filing a motion to transfer the motions to quash, seeking to transfer those motions to quash to the United States District Court

for the Southern District of Ohio.[14]   Accordingly, Plaintiffs file their motion to transfer contemporaneously with this Joint Status Report.  Absent Movant withdrawing his motions to quash, the motion to transfer provides this Court with a pathway to resolving Movant's motions to quash by one of two options.

a.     Option 1: Deny Movant's motions to quash and order Movant to immediately and fully comply with the subpoenas, with a date certain deadline for full compliance.  Under this option, the Court could then deny the motion to transfer as moot.

b.     Option 2: Grant the motion to transfer, and transfer both motions to quash to the United States District Court for the Southern District of Ohio.  That court would then decide the motions to quash, and any Disputed Issues that remain after such decision.

**B.     Movant's position on transferring the motions to quash**

71.   Movant adopts and incorporates his argument previously set out in Section IV.

---

[14] Plaintiffs in their Supplemental Status Report suggested a scheduling order for a motion to transfer that would have established dates certain for filing the motion, Movant's response, and Plaintiffs' reply in support.  (ECF No. 63, at 15.)  In hindsight, Plaintiffs could have been clearer by instead filing a motion for a scheduling order.

Respectfully submitted this 26th day of August, 2022,

*/s/ Allen L. Bohnert*
**Allen L. Bohnert (Ohio 0081544)**
Assistant Federal Public Defender
Trial Attorney for Plaintiffs Jackson
and Fitzpatrick

*/s/ Adam M. Rusnak*
**Adam M. Rusnak (Ohio 0086893)**
Assistant Federal Public Defender
Co-Counsel for Plaintiffs

Office of the Federal Public Defender
for the Southern District of Ohio
Capital Habeas Unit
10 West Broad Street, Suite 1020
Columbus, Ohio 43215
614-469-2999
614-469-5999 (fax)
Allen_Bohnert@fd.org
Adam_Rusnak@fd.org

And

Steve Marshall
Attorney General
Carrie Ellis McCollum (ELL037)
General Counsel

*/s/ Stephanie L. Smithee*
Stephanie L. Smithee (SMI255)
Assistant Attorney General
Alabama Department of Corrections
Legal Division
P. O. Box 301501
Montgomery, Alabama 36130
(334) 353-5495
Stephanie.Smithee@doc.alabama.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2022, I electronically filed the foregoing **Joint Status Report** with the Clerk of the United States District Court for the Middle District of Alabama using the CM/ECF system, which will send notification of such filing to counsel for all parties.

*/s/ Allen L. Bohnert*
Allen L. Bohnert **(Ohio 0081544)**
Assistant Federal Public Defender
Trial Attorney for Cleveland Jackson and
Stanley Fitzpatrick

36